JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS
Emmanuil G. Kaidanov

### DEFENDANTS
Pennsylvania State University
David Joyner
Julie Del Giorno

**(b)** County of Residence of First Listed Plaintiff   Centre County
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF
THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
Alvin F. de Levie, Esquire
2 Penn Center, Suite 1850
Philadelphia, PA 19102
215-351-1100

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** / **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability / Product Liability | | | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / Pharmaceutical Personal Injury | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' / Product Liability | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 152 Recovery of Defaulted Student Loans | Liability / ☐ 368 Asbestos Personal | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| (Excludes Veterans) | ☐ 340 Marine / Injury Product | | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 370 Other Fraud | ☐ 720 Labor/Management | ☐ 862 Black Lung (923) | ☐ 890 Other Statutory Actions |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal / ☐ 371 Truth in Lending | Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 891 Agricultural Acts |
| ☐ 196 Franchise | Injury / ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 893 Environmental Matters |
| | ☐ 362 Personal Injury - / Property Damage | ☐ 751 Family and Medical Leave Act | ☐ 865 RSI (405(g)) | ☐ 895 Freedom of Information Act |
| | Medical Malpractice / ☐ 385 Property Damage Product Liability | ☐ 790 Other Labor Litigation | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** / **PRISONER PETITIONS** | ☐ 791 Employee Retirement Income Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights / **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | |
| ☐ 220 Foreclosure | ☐ 441 Voting / ☐ 463 Alien Detainee | | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 950 Constitutionality of State Statutes |
| ☐ 230 Rent Lease & Ejectment | ☒ 442 Employment / ☐ 510 Motions to Vacate | | | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ / Sentence | | | |
| ☐ 245 Tort Product Liability | Accommodations / ☐ 530 General | | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities / ☐ 535 Death Penalty | **IMMIGRATION** | | |
| | Employment / **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 446 Amer. w/Disabilities / ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | Other / ☐ 550 Civil Rights | | | |
| | ☐ 448 Education / ☐ 555 Prison Condition | | | |
| | / ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from Another District *(specify)*   ☐ 6 Multidistrict Litigation

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity):*
42 U.S.C. Section 1983
Brief description of cause:
Wrongful Termination

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.    DEMAND $ 3,000,000.00    CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
*(See instructions):*   JUDGE _____   DOCKET NUMBER _____

DATE  6/4/14    SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

|  |  |  |
|---|---|---|
| Emmanuil G. Kaidanov | : | CIVIL ACTION |
| v. | : | |
| Pennsylvania State University | : | |
| David Joyner | : | NO. |
| Julie Del Giorno | : | |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

### SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a) Habeas Corpus — Cases brought under 28 U.S.C. § 2241 through § 2255.                                           ( )

(b) Social Security — Cases requesting review of a decision of the Secretary of Health
    and Human Services denying plaintiff Social Security Benefits.                                                 ( )

(c) Arbitration — Cases required to be designated for arbitration under Local Civil Rule 53.2.          ( )

(d) Asbestos — Cases involving claims for personal injury or property damage from
    exposure to asbestos.                                                                                         ( )

(e) Special Management — Cases that do not fall into tracks (a) through (d) that are
    commonly referred to as complex and that need special or intense management by
    the court.  (See reverse side of this form for a detailed explanation of special
    management cases.)                                                                                            ( )

(f) Standard Management — Cases that do not fall into any one of the other tracks.                         (X)


| 6/4/14 | Alvin F. de Levie, Esquire | Plaintiff  Emmanuil G. Kaidanov |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| **215-351-1100** | **215-567-1998** | **afdesq@verizon.net** |
| **Telephone** | **FAX Number** | **E-Mail Address** |

**(Civ. 660) 10/02**

FOR THE EASTERN DISTRICT OF PENNSYLVANIA — DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff: 1370 Penfield Road, State College, PA 16801

Address of Defendant: 4601 Market Street, Philadelphia, PA 19139; 201 Old Main, University Park, PA 16802; 101 Jordan Center, University Park,. PA 16802; 333 James M. Elliott Building, University Park, PA 16802

Place of Accident, Incident or Transaction:   Commonwealth of Pennsylvania
*(Use Reverse Side For Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more of its stock?
(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 7.1(a))   Yes☐  No☒

Does this case involve multidistrict litigation possibilities?   Yes☐  No☒
*RELATED CASE, IF ANY:*
Case Number: _____ Judge _____ Date Terminated: _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?
   Yes☐  No☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action in this court?   Yes☐  No☒

4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual?
   Yes☐  No☒

CIVIL: (Place ✔ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☒ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
   (Please specify) _____

B. *Diversity Jurisdiction Cases:*

1. ☐ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability — Asbestos
9. ☐ All other Diversity Cases
   (Please specify) _____

## ARBITRATION CERTIFICATION
*(Check Appropriate Category)*

I, Alvin F. de Levie , counsel of record do hereby certify:

☒ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☒ Relief other than monetary damages is sought.

DATE: 6/4/14 _____ 23245
   Attorney-at-Law   Attorney I.D.#

**NOTE:** A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 6/4/14 _____ 23245
   Attorney-at-Law   Attorney I.D.#

CIV. 609 (5/2012)

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA 19102

## IN THE UNITED STATES DISTRICT COURT FOR THE
### EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| EMMANUIL G. KAIDANOV | : | |
| | : | |
| Plaintiff, | : | |
| | : | JURY TRIAL DEMANDED |
| v. | : | |
| | : | CASE NO.: |
| PENNSYLVANIA STATE UNIVERSITY | : | |
| 201 Old Main | : | |
| University Park, Pennsylvania 16802 | : | |
| | : | |
| and | : | |
| | : | |
| DAVID JOYNER | : | |
| 101 Jordan Center | : | |
| University Park, Pennsylvania 16802 | : | |
| | : | |
| and | : | |
| | : | |
| JULIE DEL GIORNO | : | |
| 333 James M. Elliott Building | : | |
| University Park, Pennsylvania 16802 | : | |
| | : | |
| Defendants. | : | |

## COMPLAINT

Plaintiff, Emmanuil G. Kaidanov, by and through his undersigned counsel, Alvin F. de Levie, Esquire, files this Complaint against the above-captioned Defendants, and as grounds in support thereof, alleges the following:

### JURISDICTION

1.    This civil rights action is brought pursuant to 42 U.S.C. §1983.

2.    Jurisdiction is based upon 28 U.S.C. §1331 and §1343(a)(1), (3) and (4).

3.    Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and (d) because Defendant Pennsylvania State University maintains several places of business and regularly

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

conducts business within the Eastern District of Pennsylvania.  Defendant's places of business within this district are located at: 4601 Market Street, Philadelphia, PA 19139; 1600 Woodland Road, Abington, PA 19001; 25 Yearsley Mill Road, Media, PA 19063; 30 East Swedesford Road, Malvern, PA 19355; 2809 Saucon Valley Road, Center Valley, PA 18034, Tulpehocken Road, Reading, PA 19610. Penn State in a multi-faceted marketing campaign has stated that it "lives here" in Philadelphia.

## PARTIES

4.     Plaintiff Emmanuil G. Kaidanov (hereinafter "Plaintiff" or "Coach Kaidanov") is an adult male individual who at all times relevant hereto has resided in State College, Centre County, Pennsylvania.

5.     At all times relevant hereto, Plaintiff was employed by Defendant Pennsylvania State University (hereinafter "Penn State" or "Penn State University") as head coach of both the men's and women's fencing teams, and at all relevant times was under contract with Penn State in that capacity.

6.     As head coach over a period of 31 years, the Plaintiff led the men's and women's Penn State fencing teams to 12 National Championships, 9 second-place finishes, and 25 top three finishes.  Coach Kaidanov was honored 4 times as the NCAA Coach of the Year, and his student-athletes have won 28 individual national titles.  Coach Kaidanov produced 188 All American All-American fencers, 10 Olympians, and the first and only United States World Champion. Coach Kaidanov coached the United States fencing team at the World Championships, the World University Games, the Pan American Junior Championships and the World Under-Twenty Championships. In addition, Coach Kaidanov has served as the United States Fencing Association's National Training Director.

7.     Defendant Penn State University is a public/quasi-public, state government

2

related educational institution, duly organized and existing under the laws of the

Commonwealth of Pennsylvania, with a principal place of business at 201 Old Main,

University Park, Pennsylvania 16802. [1]

8.      Defendant David M. Joyner (hereinafter "Joyner") is an adult citizen of the

United States and at all times relevant hereto was a resident of the Commonwealth of

Pennsylvania.

9.      At all times relevant hereto, Defendant Joyner was the Director of Athletics at

Penn State University, and in that capacity, undertook the actions described herein while the

agent, servant and employee of Penn State University.  Defendant Joyner was at all relevant

times acting under color of state law.  Both in his official and individual capacities, Defendant

Joyner was responsible for fairly and equitably establishing, maintaining and enforcing the

customs, practices and policies of the Penn State University Athletics Department, subject to

and consistent with applicable state and federal law.  He is being sued in both his official and

individual capacities.

10.      Defendant Julie Del Giorno (hereinafter "Del Giorno") is an adult citizen of the

United States, and at all times relevant hereto, was a resident of the Commonwealth of

Pennsylvania.

11.      At all times relevant hereto, Defendant Del Giorno was employed by Defendant

Penn State University, and held the title "Athletics Integrity Officer".  In that capacity, she

undertook the actions described herein both individually and as the agent, servant and

employee of Defendant Penn State University.  As the agent, servant and employee of

Defendant Penn State University, Del Giorno was at all times relevant hereto acting under

---

[1] See, Penn State – public or private? (Penn State's official statement regarding their pubic status.)
http://www.psu.edu/ufs/about_senate/committees/univ-gov/tg_may_2012_publicvsprivate_final.pdf

3

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

color of state law.  Both in her official and individual capacities, Defendant Del Giorno was

responsible for the fair and equitable development, implementation and oversight of policies

and practices within the Department of Intercollegiate Athletics that were supposed to ensure

compliance with certain foundational documents, and ethical conduct, subject to and

consistent with applicable state and federal law. Defendant Del Giorno was not Coach

Kaidanov's supervisor and at no time had the authority or ability to terminate Coach

Kaidanov's employment.

12.    Defendant Del Giorno's position was created as part of Penn State's attempt to

fulfill the requirements of the Athletics Integrity Agreement entered into by Penn State in

August of 2012 with the NCAA and the Big Ten Conference.  At all times relevant hereto,

Defendant Del Giorno was responsible for fairly and equitably overseeing Penn State's

compliance with its obligations of integrity, civility, ethics and institutional control, subject to

Penn State's own policies and applicable law.  Defendant Del Giorno is being sued in both her

official and individual capacities.

13.    At all times relevant hereto, Defendants Joyner and Del Giorno, along with

Dovizia Long and Susan McGarry-Basso, were acting as the agents, servants and employees of

Defendant Penn State University, and were acting both individually and within the course and

scope of their agency and employment.

## FACTS

14.    Plaintiff hereby adopts and incorporates by reference any and all facts

previously stated, as if fully set forth herein.

15.    In September of 1982, Coach Kaidanov was hired by Penn State as the coach of

the men's fencing team.  The Plaintiff entered into a contract at that time with Defendant

Penn State.  Thereafter, the Plaintiff's contract was renewed annually, without exception or

4

qualification, creating a reasonable and non-unilateral expectation of continued employment. *See* Annual Renewal Letters attached hereto as Exhibit "A".

16.     Prior to the events and circumstances set forth herein, Coach Kaidanov's employment contract was most recently renewed on July 1, 2013, approximately five months after an incident in February of 2013 involving a student-athlete for whom Plaintiff was responsible as head coach, which incident is described herein, and which incident became the pretext for the Plaintiff's unjust and wrongful termination in August of 2013.

17.     As a contractual employee of Defendant Penn State University, Coach Kaidanov had a cognizable property interest in his continued employment sufficient to trigger the procedural due process requirements of the Fourteenth Amendment to the United States Constitution.  Notwithstanding the foregoing, Coach Kaidanov was mid-contract with Penn State at the time of his wrongful discharge, not an at-will employee, and could not be terminated without a good-faith showing of just cause, good-faith enforcement of all applicable University policies consistent with law, and a pre-termination *Laudermill* hearing.[2]

## THE INCIDENT INVOLVING A FALSE ACCUSATION AGAINST A STUDENT-ATHLETE ON THE WOMEN'S FENCING TEAM- FEBRUARY 2013

18.     In February of 2013, a female student-athlete to be referred to herein as "Ms. Doe" was a Penn State varsity student-athlete, and a member of the women's fencing team coached by the Plaintiff.  As such, Ms. Doe's well-being, and her compliance with University policies and applicable law, were subject to the Plaintiff's oversight, and were his responsibility as a head coach.

19.     In February of 2013, Ms. Doe was unexpectedly called to the Penn State

---

[2] Staff members dismissed during the terms of their contracts have interests in continued employment that are safeguarded by due process. Bd. of Regents of State Colleges v. Roth, 408 U.S. 564, 576-77, 92 S. Ct. 2701, 2709, 33 L. Ed. 2d 548 (1972).

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

University Police Department and was advised that she had been accused of the possession of drugs, an accusation which was later proved false.  A member of the Athletics Department staff  thought she saw "Ms. Doe" drop a piece of rolled up white athletic tape, which the staff member erroneously concluded, without a scintilla of evidence or investigation  was a "joint". At no time had Ms. Doe used or possessed drugs.  Without first addressing Ms. Doe or Coach Kaidanov regarding this erroneous assumption, the staff member falsely reported Ms. Doe for drug possession, thereby subjecting her to possible criminal sanctions, loss of her position as a member of the women's fencing team, and potential irreparable damage to her future prospects for education and employment.

20. Penn State police officers "cleared" Ms. Doe of the accused drug possession. Coach Kaidanov recognized the severity of the situation and took immediate and appropriate action in response.  Coach Kaidanov promptly addressed the matter with Ms. Doe and her parents. At Coach Kaidanov's direction, Ms. Doe voluntarily agreed to take a drug test. The negative result of this test further confirmed that the accusations against her were false.  Coach Kaidanov has received the unqualified support of Ms. Doe, her parents, and from members of the Penn State University men's and woman's fencing team since his termination.

21.     In order to comply with his duties and obligations as a head coach, Coach Kaidanov was required to monitor, oversee, inquire and investigate his team's compliance with the "Athletics Integrity Agreement" (hereinafter "the AIA") and other relevant standards and obligations, and was responsible under the AIA to represent his team's compliance with these standards, including the NCAA Constitution and Bylaws and the Big Ten Handbook. This duty included an obligation to investigate and report suspected violations of the NCAA's rules, the Big Ten's rules, the Athletics Department's own policies and procedures, or other conduct that has a reasonable risk of undermining the University's commitment to principles

6

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

of civility, integrity and ethical conduct in its Athletics Department. NCAA Bylaw 11.1.2.1 required Coach Kaidinov, as head coach of the fencing program to investigate and make personal inquiries of all relevant staff regarding the incident involving Ms. Doe.

22.     In addition to investigating potential wrongdoing by one of his student athletes, the aforementioned obligations broadly encompassed the duty to inquire into allegations made falsely by any other staff member of the Athletics Department, since such behavior similarly threatens the University's commitment to principles of civility, integrity and ethical conduct in its Athletics Department.

23.     In addition to the AIA, the Plaintiff was subject to obligations imposed upon him by the Pennsylvania State University **Code of Conduct for Intercollegiate Athletics** (hereinafter the "Code of Conduct"). The Plaintiff was a "covered person" under said Code, as were "all coaches and all managers of any of the University's NCAA-sanctioned Division I intercollegiate athletics teams; all University staff and other University and Athletics Department employees who are directly involved with any of the University's NCAA-sanctioned intercollegiate athletics teams… and all members of the Athletics Director's Executive Committee." For purposes of construing these duties, an individual is considered "directly involved" with such a team if such individual "assists with any such team's activities and has a reasonable likelihood of recurring personal interaction with both varsity student-athletes and coaches resulting from his or her employment responsibilities."

24.     Pursuant to the Code of Conduct, all covered persons, including the Plaintiff and members of the Athletics Department staff, were required to comply with all University policies and procedures, the ICA Policy Manual, applicable NCAA and Big Ten standards, and with all applicable laws, rules and regulations. Furthermore, the Code of Conduct required Coach Kaidanov to report "any suspected violation(s) of the University's or the Athletics

7

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

Department's policies, or other conduct that materially undermines the University's and the

Athletics Department's commitment to principles of civility, integrity and ethical conduct in

the Athletics Department, particularly when engaged in by other "covered persons".  At the

very least, compliance with these obligations requires good faith inquiry and investigation by

each "covered person" before further action is taken.

25.    According to the ICA Policy Manual, with which compliance is mandated by the

aforesaid Code of Conduct, certain "Rights and Responsibilities" are enumerated as to

Coaches and Staff.  Specifically, the ICA Policy Manual provides as follows:

> "Coaches/Staff also have other important responsibilities in a
> number of areas.  They have the responsibility to provide the
> public with a quality program and to represent the Athletics
> Department, the University, and the Commonwealth of
> Pennsylvania in a manner that will enhance and promote
> confidence in the Penn State athletic program.  ***Coaches/Staff
> have the responsibility to take a sincere interest in both
> the academic and athletic activities of all student-
> athletes and to ensure that each individualis treated
> with fairness and provided with the optimal opportunity
> to excel.***  They have the responsibility to operate all programs and
> activities within the NCAA Constitution and Bylaws, the Big Ten
> Handbook, and the policies and procedures of the University and
> the Department, including this ICA Policy Manual and the Penn
> State Code of Conduct for Intercollegiate Athletics."  (Emphasis
> added)

26.    In addition to the cited obligation to protect his student-athletes, the ICA Policy

Manual imposed the following additional affirmative obligations upon coaches and staff

members, including Coach Kaidanov:

> Coaches shall, in the event a student-athlete has violated the NCAA
> Constitution and/or Bylaws, the Big Ten Handbook, and/or the
> applicable University or Athletics Department policy or procedure,
> immediately report any such violation to the appropriate University
> and/or Athletics Department personnel...

> Coaches shall immediately report to the Athletics Director or his
> designee any significant disciplinary sanction imposed on a

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

> student-athlete, including but not limited to dismissal from the team...
>
> Coaches shall immediately report to the Athletics Director or his designee any significant incident or any other incident that may reflect upon the reputation and/or interests of the University and/or Athletics Department. A coach or Staff member found in violation of the above rules.... shall be subject to disciplinary or corrective action... including, but not limited to, termination of employment....

27.    As any perceived or alleged failure to undertake the aforesaid responsibilities and duties by Coach Kaidanov could cost him his career, reputation and future employment, he was strictly compelled by the Defendant, Penn State University, to remain fully informed and apprised of all matters bearing on the well-being of his student-athletes, all matters potentially constituting a violation of any applicable standards or rules, significant disciplinary actions taken as to his student-athletes, and any significant incident which may reflect negatively upon the fencing team, the University, and the Athletics Department.  It is indisputable that accusations of illegal drug use and/or possession by one of Coach Kaidanov's student-athletes qualifies in all of the categories cited above, and that just as he was compelled to report, he was equally compelled to investigate any matter so qualifying.

28.    Once the risk of further damage to Ms. Doe's reputation and future prospects caused by the false accusation of criminal wrongdoing had been curtailed, Coach Kaidanov engaged in further inquiry as to the circumstances of the false accusation, in order to ascertain how it had occurred, why he had not been advised by the informant in light of his direct duties and responsibilities to investigate and report such matters, and to determine whether any further steps were necessary to resolve this matter to the benefit of Ms. Doe and the fencing team, the Athletics Department, and the University.

29.    In the course of the inquiry necessary to meet his responsibilities, Coach

9

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

Kaidanov spoke to the Athletics Department staff member who had made the false report regarding Ms. Doe and expressed his disappointment that the staff member had not informed him of what had happened.[3] Coach Kaidanov initiated no further conversations and Coach Kaidanov took no further actions.

30.     During the aforesaid conversation between Coach Kaidanov and the staff member who had falsely reported Ms. Doe for drug possession, Coach Kaidanov expressed no intention to take any further action regarding the staff member, threatened no adverse employment action against her, and undertook no adverse actions against her.  Indeed, notwithstanding the lack of intention on the part of Coach Kaidanov to take any further action regarding the staff member, Coach Kaidanov's professional relationship to the staffer who had made the false report precluded even the possibility of any sort of hypothetical adverse action. Coach Kaidanov did not have the power to terminate the staffer, he could not and did not affect the staffer's prospects for promotion, he did not have the authority to affect her compensation, he had no control over the terms and conditions of her employment, he made no negative evaluations, he made no negative references, and he made no threats.  Coach Kaidanov took no action at all which was adverse to the staffer's employment.

31.     At no time did Coach Kaidanov engage in any activity that could be deemed legally or factually to constitute "retaliation", nor by definition was he ever in a position to do so as either an employer or person legally recognized as having the potential to take adverse employment action against the staff person who falsely and/or erroneously accused Ms. Doe.

32.     To the knowledge of Coach Kaidanov, the staff member to whom he spoke has neither personally claimed of nor offered any evidence of retaliation or other adverse

---

[3] Coach Kaidanov subsequently learned that the staff member made the false report anonymously when he was informed by Defendant Del Giorno during their July, 2013 meeting. When Coach Kaidanov spoke to the Athletics Department staff member he was unaware that the report had been made anonymously.

employment action.

33.     The actions taken by Coach Kaidanov, in the good faith exercise of the

obligations and duties imposed upon him by Penn State and the NCAA to ensure the well

being of the student-athletes, the fencing team, the Athletics Department and the University

as aforesaid, are themselves protected actions.  Indeed, the Code of Conduct expressly

provides as follows:

### Non-Retaliation and Confidentiality

The University and the Athletics Department maintain a strict non-
retaliation and non-retribution policy for anyone, including but not
limited to *any Covered Person, who takes action that he/she
reasonably believed to be necessary to uphold or enforce
compliance with this Code of Conduct, the ICA Policy Manual,
the University's obligations under the NCAA Constitution and
Bylaws and Big Ten Handbook, including NCAA and Big Ten
principles regarding institutional control, responsibility,
ethical conduct and integrity...* (Emphasis added)

34.     Had Coach Kaidanov failed to take the actions required of him by Penn State and

the NCAA, pursuant to its own standards, codes of conduct, agreements, and policies, he

would have been deemed in violation of the aforesaid requirements, and would have exposed

himself to sanctions  imposed upon him by the NCAA and Big Ten, as well as the risk of

termination by the University.   Retaliation by Penn State against a coach who upholds these

standards is one of the express risks that the Code of Conduct is intended to insure against,

and to which Penn State has expressly bound itself.

### MEETING WITH DEL GIORNO - JULY 2013

35.     After the single conversation in February of 2013, between Coach Kaidanov and

the staff member who falsely accused Ms. Doe of drug possession, Coach Kaidanov continued

to carry out his duties as head coach of the fencing team, including recruiting, running Penn

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

State's Summer fencing camp, and preparing for the upcoming academic and athletic year.  As previously noted, Coach Kaidanov's contract was renewed without comment or reservation on July 1, 2013.

36.     In approximately March of 2013, Defendant Del Giorno introduced herself to Coach Kaidanov at the commencement of her employment as Athletics Integrity Officer, at which time Coach Kaidanov expressed his reservations regarding the Defendant's job title, and the potential for abuse implicit in such a position.  Notwithstanding the concerns raised by Coach Kaidanov on that occasion, he did not at that time have reason to suspect that Defendant Del Giorno would ambush him and misuse her powers.

37.     In or about July 2013, Defendant Del Giorno unexpectedly contacted Coach Kaidanov, to arrange a meeting.  As there had been no occurrence that appeared to fall within the purview of Del Giorno, as Athletics Integrity Officer, Coach Kaidanov expressly asked Defendant Del Giorno about the purpose and subject matter of the meeting.  Defendant Del Giorno expressly refused to provide Coach Kaidanov with this information.

38.     At no time prior to this July meeting did Defendant Del Giorno, who upon information and belief was acting on behalf of or in conjunction with Defendant Joyner, inform Coach Kaidanov of the purpose or subject matter of the meeting.  At no time prior to the Plaintiff's July meeting with Defendant Del Giorno did she, or any Defendant, inform Coach Kaidanov that a complaint of any kind had been made about him, the subject matter of such a complaint, the information or evidence in support of such a complaint, or any information at all.  At no time was he informed of any failure to satisfy all requirements of his employment, as he had done for 31 years without issue.  All such information, if there was any, was intentionally withheld to place the Plaintiff at a disadvantage going into his meeting with Del Giorno in July, 2013.

12

39.     At the July meeting with Defendant Del Giorno, she inquired into the facts and circumstances of the matter involving Ms. Doe, informing the Plaintiff for the first time that the staff member had made the anonymous report regarding drug possession pursuant to Penn State's post-Sandusky anonymous reporting system.  Nevertheless, Defendant Del Giorno offered no information or evidence suggesting that Coach Kaidanov had violated any policy of the University, or any terms or provisions of any of the rules, codes of conduct or agreements to which Penn State was a party.

40.     If Coach Kaidanov was under investigation for alleged violation of Penn State's policy regarding "retaliation", Defendant Del Giorno purposefully withheld such information from Coach Kaidanov.  Defendant Del Giorno purposefully failed to advise Coach Kaidanov of any allegations against him which could lead to discipline, up to and including termination, and purposefully misled Coach Kaidanov to the false belief that there was "nothing to be concerned about", and that no event worthy of discipline had occurred.

41.     During the July meeting, Defendant Del Giorno gave no indication that this was an inquisition for the benefit of the University, withheld from the Plaintiff all materials relevant to the matters about which he was questioned, and gave no indication that the information discussed at that meeting would be used to support the potential, or planned, termination of the Plaintiff's employment, thereby preventing him from offering a meaningful response or rebuttal to any potential allegations against him.

42.     No person who could be considered a supervisor of Coach Kaidanov was present at the first meeting with Defendant Del Giorno. He was not informed by any of the Defendants that he had or was suspected of failing in any way to carry out his duties and obligations as head coach, or as a staff member of the University.

43.     At the conclusion of the July meeting with Defendant Del Giorno, Coach

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA   19102

Kaidanov was not provided with any written documentation regarding the meeting, including but not limited to a signed written summary indicating the date of the meeting and the points covered in the discussion.  He was not provided with documentation stating that he had failed to meet any expectation or standard of his employment.  He was not informed, verbally or in writing, that there was a prior or ongoing failure of performance, which could result in dismissal, whether or not remedial standards were imposed or met.  All of the foregoing failures by Defendant Del Giorno, and by the other all Defendants were expressly in violation of Penn State University's written policies and procedures, and further constituted a failure by the Defendants to uphold Coach Kaidanov's right to procedural due process.

44.     At all times relevant hereto, Defendant Del Giorno, both in her official and individual capacities, whether acting alone or in conjunction with Defendant Joyner, acted so as to intentionally deprive the Plaintiff of his right to due process in matters directly affecting his employment.  Defendant Del Giorno knew, and withheld from Plaintiff, the fact that their July meeting would be used as an evidentiary proceeding to the benefit of the Defendants, and did so contrary to the Plaintiff's expectation of his rights of due process and future employment, both contractually and as a matter of law.

## TERMINATION BY JOYNER

45.     In the weeks following the July meeting, Coach Kaidanov was contacted by the administrative assistant to Defendant Joyner, asking that Coach Kaidanov come to Joyner's office for a meeting on August 20, 2013.  Once again, Defendants intentionally kept Coach Kaidanov unaware of the purpose of the meeting with Defendant Joyner. Prior to the scheduled meeting, Defendants had already conspired to terminate Coach Kaidanov, the meeting was merely to effect this termination on the pretext of a previously undisclosed and undocumented charge of "retaliation".

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA   19102

46.     At no time prior to the meeting with Defendant Joyner on August 20, 2013 had there been any further inquiry or investigation into the events that lead to the pre-textual termination of Coach Kaidanov, which he was was informed of, or in which he was allowed to participate.

47.     At the meeting on August 20, 2013, which was also attended by Defendant Del Giorno, Defendant Joyner informed Coach Kaidanov that Joyner had "lost confidence" in Coach Kaidanov and advised Coach Kaidanov for the first time that he was accused of retaliating against the staff member with whom he had spoken to regarding her false report about Ms. Doe.

48.     Defendant Joyner purportedly stated the reasons for Coach Kaidanov's dismissal --all of which are pretextual -- in his letter dated August 20, 2013, a copy of which is attached hereto as Exhibit "B". Defendant Joyner terminated Coach Kaidanov without just cause, without notice that his employment was in jeopardy, without an opportunity to meaningfully respond to the charges against him or to rebut the predetermined decision before it would take effect, and without complying with the policies and procedures to which the University was bound.

49.     The allegations made by Defendant Joyner, based upon the false and improper statements and motivations of Defendant Del Giorno, and potentially by other employees, agents and servants of Penn State University, were false, contrary to all available evidence, and served as a pretext to wrongfully discharge Coach Kaidanov, despite his full and complete satisfaction of all duties imposed upon him, contractual and otherwise, for a period of 31 years.

## THE GRIEVANCE PROCESS

50.     Subsequent to Coach Kaidanov's wrongful discharge by Defendant Joyner, in

15

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA   19102

conjunction with Defendant Del Giorno, while both were acting as agents of Defendant Penn State University, Defendant Penn State University staged a grievance hearing on September 27, 2013. This proceeding occurred before Dovizia Long, a manager of Employee Relations at Penn State and an employee of Defendant Penn State University. The alleged purpose of the grievance proceeding was to enable Ms. Long to hear evidence concerning the basis for Defendant Joyner's decision to wrongfully terminate Coach Kaidanov's employment, and to allow Coach Kaidanov to respond to the evidence against him. In reality, the grievance hearing served as a mere rubber-stamp approval of Defendants Joyner and Del Giorno's actions without ever providing Coach Kaidanov with any evidence of the alleged retaliation nor a meaningful opportunity to respond. Coach Kaidanov was precluded from presenting relevant rebuttal information including but not limited to statements of Coach Kaidanov's good name, character, integrity, and reputation to rebut Joyner's pre-textual claim he had a factual basis to lose confidence in Coach Kaidanov.

51.    At the grievance hearing on September 27, 2013, Defendant Joyner's evidentiary presentation consisted entirely of reading the text of his letter dated August 20, 2013, setting forth the inadequate and specious grounds upon which Coach Kaidanov's termination was purportedly based. At no time did Defendant Joyner, or any other person present at the grievance hearing, factual, objective, specific, credible or corroborated evidence of wrongdoing of any kind by Coach Kaidanov, including that Coach Kaidanov had engaged in adverse employment action against any person, or that he had engaged in any conduct that was legally or factually considered retaliatory, as that term is established in the employment context. Tellingly, the staff member that Coach Kaidanov was accused of retaliating against was completely absent from every stage of the termination process. No statement or accusation was ever presented or attributed to her regarding the conversation she had with

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA   19102

Coach Kaidanov or any events or occurrences after said conversation.

52.   Defendant Joyner identified Policy AD67 of the Penn State Policy Manual,

entitled "Disclosure of Wrongful Conduct and Protection From Retaliation", and falsely

alleged that Coach Kaidanov had violated said policy.  Said policy proscribes retaliation

against persons who make good faith reports of suspected wrongful conduct, and defines

"retaliation" as follows:

> **"Retaliation"** means any ***adverse action*** taken by a member of
> the University faculty, staff, or student body against any individual on
> the basis of a **Good Faith Report** made by such individual, or on
> the basis of such individual's participation in an investigation,
> hearing, or inquiry by the University or an Appropriate Authority....
> ***Retaliation*** shall include, but not be limited to, ***harassment,
> discrimination, threats of physical harm, job termination,
> punitive work schedule or research assignments, decrease
> in pay or responsibilities, or negative impact on academic
> progress***.  (Emphasis added)

53.   Both as defined by AD67, and as determined at law, there is no evidence that

Coach Kaidanov engaged in any activity that has previously been considered or determined to

be retaliation.  Indeed, as previously stated herein, Coach Kaidanov lacked the professional

nexus to the staff member who falsely accused Ms. Doe of drug possession to make any of the

indicia of retaliation possible.

54.   As a further attempt at validating their wrongful termination of Coach

Kaidanov, the Defendants offered unsupported, uncorroborated, contradictory and

inconsistent subjective impressions that Coach Kaidanov might, at some future time, fail to

adhere to University Policy AD67, which the Defendants failed to demonstrate had been

violated prior to his discharge.

55.   Coach Kaidanov had accepted, and at all times adhered to, his responsibility to

follow AD67, notwithstanding that the policy failed to provide Penn State's students, coaches

and staff with protection and safeguards against false and unsubstantiated anonymous reports of alleged misconduct, of the sort made against Ms. Doe.  Despite his disagreement with the nature of the policy, Coach Kaidanov had explicitly stated, and was recorded as having stated, that he has followed said policy and would do so in the future as he was required to do.

56.   At no time before or after Coach Kaidanov's wrongful termination did the Defendants offer evidence, or otherwise attempt to support, any presumptive determination that Coach Kaidanov had engaged in any act of misconduct, whether in violation of any University policy, codes of conduct, agreements, rules or laws.  Said failure was in direct violation of University Policy HR78, pursuant to which it was incumbent upon Defendant Penn State University, by and through Defendants Joyner and Del Giorno and others, as its agents, to allege and demonstrate the occurrence of a "**major** act of misconduct" in order to justify bypassing the requirements of HR78 and order immediate dismissal of Coach Kaidanov.

57.   The entirety of the evidence offered against Coach Kaidanov at the September 27, 2013 hearing was the subjective belief of Defendants Joyner and Del Giorno that at some prospective time in the future, Coach Kaidanov might not adhere to AD67.  Said subjective beliefs were in direct contradiction to the express representations by Coach Kaidanov that AD67 would be adhered to should it ever apply. Though Defendant Del Giorno intentionally and falsely stated that Coach  Kaidanov indicated he would not follow AD67 , Robert Manny's -- the Senior Director of Employee Relations-- hand written notes confirm that Plaintiff never stated that he would not follow AD67 and that Defendant Del Giorno was mistaken.

58.   Defendant Joyner admitted that he never even considered the NCAA bylaws or rules before terminating Coach Kaidanov, notwithstanding the affirmative duties imposed upon Coach Kaidanov by said provisions, as well as by the applicable agreements, codes of

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA   19102

conduct, policy manuals and guidelines imposing affirmative duties and responsibilities upon

Coach Kaidanov, with which he was complying at all times relevant hereto.

59.     Defendants Joyner and Del Giorno wrongfully determined, in direct

contradiction to the affirmative duties and responsibilities imposed upon Coach Kaidanov by

the aforesaid directives, that he could satisfy his duties and responsibilities merely by

receiving some "details" of the report involving Ms. Doe from a third party, without

conducting the independent inquiry necessary to both to satisfy his affirmative duties and

responsibilities, and protect himself against the risk of sanctions by the NCAA and

termination for failing to do so.

60.     Defendants Joyner and Del Giorno's interpretation of Coach Kaidanov's

mandatory oversight and reporting requirements is erroneous and unfounded, and directly

contradicts, among other rules, NCAA Bylaw 11.1.2.1, which further imposes upon head

coaches the responsibility of his program's compliance with NCAA rules, including but not

limited to prohibitions on drug use and possession.  The NCAA Drug Testing Program

Protocol expressly bans marijuana or THC, the possession of which would impose upon Coach

Kaidanov a non-delegable duty to investigate and report such an incident as a violation of

NCAA rules.  Bylaw 11.1.2.1 makes the failure of a head coach to affirmatively act a punishable

offense. By terminating the employment of Coach Kaidanov for simply doing what the NCAA

rules, legislation, and bylaws required of him, in fact, Penn State, Joyner and Del Giorno

itself/themselves violated  NCAA rules, legislation and bylaws.

61.     The proceeding on September 27, 2013 was fundamentally unfair, and failed to

provide Coach Kaidanov with even the most rudimentary trappings of due process.  Coach

Kaidanov was given no meaningful opportunity to hear and see the alleged evidence against

him, whether before or at the hearing, was given no meaningful opportunity to rebut the

19

**The Law Offices of Alvin F. deLevie**
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA   19102

unfounded and conclusory statements against him, and was not provided with an objective

fact finder capable of challenging or overriding the opinions and fraudulent "findings" of

Joyner, Del Giorno and Penn State University.   In addition, in all material respects the

Defendants directly violated all of the policies, codes of conduct, agreements, rules and

protections previously identified herein, setting forth the protections to which Coach

Kaidanov was contractually and otherwise entitled.

62.     Ms. Long, the hearing officer on September 27, 2013, issued written

conclusions on October 10, 2013, in which she adopted wholesale the erroneous, unfounded

and subjective impressions of Defendants Joyner and Del Giorno, stating without

independent support or objective sources that Coach Kaidanov could meet his obligations to

the NCAA by simply having received a third-party report of an incident involving alleged drug

possession and use by one of his student-athletes, notwithstanding the myriad bylaws, codes

of conduct, agreements, policies and rules imposed upon Coach Kaidanov by Penn State

University and the NCAA requiring his affirmative and direct participation in such matters, as

to which head coaches, including the Plaintiff, have been given no alternative or discretion

whatsoever.  The October 10, 2013 correspondence of Dovizia Long and the November 22,

2013 correspondence of Susan M. Baso (Vice-President for Human Resources) are attached

hereto, made a part hereof and collectively identified as Exhibit "C".

63.     Having imposed upon Coach Kaidanov clear and unequivocal conditions and

requirements upon which the continuation of his employment was expressly based, over

which Coach Kaidanov had no input, control or discretion, and Penn State University having

expressly committed itself to the implementation of these requirements and the protection of

coaches and staff members complying in good faith, the Defendants acted and conspired

maliciously and in bad faith in wrongfully terminating Coach Kaidanov on the pretext of an

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

alleged past or prospective violation of a policy with which Coach Kaidanov clearly complied. In and about the time Joyner terminated Plaintiff, the NCAA who monitored Penn State's compliance with the "post-Sandusky" Penn State and NCAA Agreement reduced the sanctions it levied against Penn State citing Penn State's commitment to the "post-Sandusky" Penn State and NCAA Agreement. compliance with University policy, as to which the University failed and refused to offer probative evidence, and as to which no due process was provided, the Defendants have themselves violated NCAA rules and bylaws, the AIA, the ICA Policy Manual, the Code of Conduct for Intercollegiate Athletics, Policy AD67, Policy HR78, Plaintiff's employment contract, the laws of the Commonwealth of Pennsylvania, and the laws of the United States of America, all without justification or excuse. It is unknown whether Defendants Penn State,

64.    By wrongfully terminating Coach Kaidanov's employment for the false reason of his alleged non- Joyner or Del Giorno have self-reported itself/themselves to the NCAA for its wrongful termination of Coach Kaidanov in violation of NCAA rules, legislation and bylaws.

## CAUSES OF ACTION

## COUNT ONE

## CONSTITUTIONAL AND CIVIL RIGHTS VIOLATIONS - 42 U.S.C. §§1983

### Plaintiff v. Individual Defendants Joyner and Del Giorno
### Violation of Procedural Due Process Rights
### Failure to Provide Adequate Pre- and Post-Termination Procedure, Impairing Liberty Interest

65.    The Plaintiff hereby adopts and incorporates by reference all preceding paragraphs, as if fully set forth herein.

66.    Prior to commencing this action, the Plaintiff has exhausted all administrative remedies.

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

67.     At all times relevant hereto, Defendants Joyner and Del Giorno, as state actors and/or persons acting under color of state law, acted both in their official capacities, and individually, to deprive Plaintiff of his constitutional and civil rights.

68.     At all times relevant hereto, Defendant Joyner had final decision making authority regarding the wrongful termination of Plaintiff's employment, and the conduct by which he was deprived of his constitutional and civil rights.

69.     At all times relevant hereto, Defendant Del Giorno conspired with Defendant Joyner to effectuate the wrongful termination of Plaintiff's employment, and the conduct by which he was deprived of his constitutional and civil rights.

70.     Defendants terminated Plaintiff's employment pre-textually, without affording the Plaintiff both constitutionally adequate pre-termination or post-termination procedural due process.

71.     The actions of the Defendants were taken under color of state law.

72.     As an employee during his contract term period, the Plaintiff had more than a unilateral expectation of continued employment, sufficient to trigger the constitutional requirement of adequate pre- and post-termination procedural due process.

73.     The Defendants failed to provide Plaintiff with even minimal procedural due process, including but not limited to, failing to provide notice of the charges or allegations against him, failing to apprise him of the risk to his employment of the charges and allegations against him, intentionally withholding information from the Plaintiff, intentionally preventing him from meaningfully responding to the charges and allegations against him, not affording him an opportunity to appeal before the termination would take effect, and otherwise depriving him of the ability to meaningfully participate in a process in which his rights were to be finally determined. At all times relevant hereto Defendants prohibited Coach Kaidanov

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

from reviewing documents referred to by Joyner, Del Giorno and Robert Manny (Senior Director, Employee Relations) during the proceedings.

74.     The Defendants had no compelling interest in prematurely and wrongfully terminating Coach Kaidanov's present and future employment without providing him with adequate and proper pre-termination procedures, as Defendants had been aware of the alleged incident which became the pretext for their wrongful termination of Coach Kaidanov for approximately five months, during which time the Defendants made no effort to address any matter with Coach Kaidanov, and during which time the Defendants made no effort to limit or preclude him from carrying out his employment duties on campus, including recruiting student-athletes, interacting with staff, faculty and students, and otherwise representing favorably the image and reputation of Penn State University and its fencing program, including internationally.

75.     The Defendants conspired at all times, acted intentionally and with malice toward the Plaintiff, or in the alternative acted with reckless disregard for the truth, and willfully devised and fabricated pre-textual reasons, explanations and claims upon which to falsely premise the Plaintiff's termination, when in fact the Plaintiff had engaged in no wrongdoing whatsoever.

76.     The Defendants acted both individually and in concert in these efforts and have colluded to bring about the deprivation of the Plaintiff's constitutional and civil rights.

77.     Defendants' express refusal to allow Coach Kaidanov to be represented by counsel at the grievance hearing on September 27, 2013 was fundamentally unfair and was not in accordance with University procedures. Defendants expressly prohibited Coach Kaidanov from being assisted by counsel despite his request for counsel and despite the Defendants knowledge that English is Coach Kaidanov's second language. This denial of counsel was itself

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA 19102

a violation of the Coach Kaidanov's right to procedural due process and precluded the Plaintiff from a fair opportunity to rebut the unfounded allegations against him.

78.    The Defendants' grievance proceedings were merely a display, and were conducted for the sole purpose of blessing the Defendants' actions with the illusion of validity and substance, while foregoing all indicia of procedural due process and any recognition of Plaintiff's constitutional and civil rights.

79.    As a direct and proximate result of Defendants' Joyner and Del Giorno's conduct, committed in their official and individual capacities, and under color of state law, Coach Kaidanov suffered denial of procedural due process, denial of equal protection, denial of his property rights, and denial of his right to liberty in his person and property.

80.    As a further direct and proximate result of the acts of the Defendants, Joyner and Del Giorno, Coach Kaidanov has suffered emotional distress, embarrassment, humiliation, damage to his reputation, damage to his earning capacity, loss of employment, loss of future employment opportunities, loss of liberty, loss of income and other financial losses, including attorneys fees, all to his detriment, loss and harm.

81.    The Defendants' actions were intentional, willful, purposeful, malicious, and were undertaken with clear knowledge and foresight that the harm complained of by the Plaintiff would occur, and further with full knowledge that their actions would violate or impair the Plaintiff's constitutional, and civil rights.

## COUNT II

## CONSTITUTIONAL AND CIVIL RIGHTS VIOLATIONS - 42 U.S.C. §§1983

**Plaintiff v. Defendant Pennsylvania State University**
**Violation of Procedural Due Process Rights**
**Failure to Provide Adequate Pre- and Post-Termination Procedure,**
**Impairing Liberty Interest**

24

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

82.    The Plaintiff adopts and incorporates by reference all preceding paragraphs and allegations, as if fully set forth herein.

83.    At all times relevant hereto, Defendants Joyner and Del Giorno were acting in the course and scope of their employment with Defendant Penn State University, and at all times were the agents, servants and employees of Defendant Penn State University.  As such, Defendant Penn State University is vicariously liable for the wrongful actions of Defendants Joyner and Del Giorno, under doctrines including, but not limited to, agency, respondeat superior, master-servant, joint venture and contract.

84.    The Defendant, Penn State University, through it agents and employees, acting in their official capacity and under color of state law, terminated Plaintiff pre-textually, without affording him constitutionally adequate pre- and post-termination procedural due process.

85.    As an employee during his contract term period, the Plaintiff had more than a unilateral expectation of continued employment, sufficient to trigger the constitutional requirement of adequate pre- and post-termination procedural due process.

86.    The Defendant failed to provide Plaintiff with even minimal procedural due process, including but not limited to, failing to provide notice of the charges or allegations against him, failing to apprise him of the risk to his employment of the charges and allegations against him, intentionally withholding information from the Plaintiff, intentionally preventing him from meaningfully responding to the charges and allegations against him, failing to provide a probationary period, failing to give the Plaintiff an opportunity to appeal before the termination would take effect, and otherwise depriving him of the ability to meaningfully participate in a process in which his rights were to be finally determined.

87.    The Defendant had no compelling interest in prematurely and wrongfully

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

terminating Coach Kaidanov's present and future employment without providing him with adequate and proper pre-termination procedures, as Defendant had been aware of the alleged incident(s) which became the pretext for their its wrongful termination of Coach Kaidanov for approximately five months, during which time the Defendant made no effort to address any matter with Coach Kaidanov, and during which time the Defendant made no effort to limit or preclude him from carrying out his employment duties on campus, including recruiting student-athletes, interacting with staff, faculty and students, and otherwise representing favorably the image and reputation of Penn State University and its fencing program, including internationally.

88.     The Defendant at all times acted intentionally and with malice toward the Plaintiff by and through its agents and employees, or in the alternative acted with reckless disregard for the truth, and willfully devised and fabricated pre-textual reasons, explanations and claims upon which to falsely premise the Plaintiff's disciplinary firing, when in fact the Plaintiff had engaged in no wrongdoing whatsoever.

89.     The Defendant, which acted both individually and jointly with the other Defendants in these efforts, has colluded to bring about the deprivation of the Plaintiff's constitutional and civil rights, and has engaged in acts of intimidation and retaliation against University personnel who have subsequently attempted to aid or support the Plaintiff's efforts to ascertain the truth of the reasons behind his discharge.

90.     The Defendant's prohibition against the Plaintiff being assisted by counsel at the administrative proceedings by which the Defendant violated the Plaintiff's constitutional and civil rights was itself a violation of the Plaintiff's right to procedural due process.

91.     The Defendant's grievance proceedings were merely a pretense, and were conducted for the sole purpose of endowing the Defendants' actions with the illusion of

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

validity and substance, while foregoing all indicia of procedural due process and any recognition of Plaintiff's constitutional and civil rights.

92.     As a direct and proximate result of Defendants' conduct, committed in their official and individual capacities, and under color of state law, Coach Kaidanov suffered denial of procedural due process, denial of equal protection, denial of his property rights, and denial of his right to liberty in his person and property.

93.     As a further direct and proximate result of the acts of the Defendants, Coach Kaidanov has suffered emotional distress, embarrassment, humiliation, damage to his reputation, damage to his earning capacity, loss of employment, loss of future employment opportunities, loss of liberty, loss of income and other financial losses, including attorneys fees, all to his detriment, loss and harm.

94.     The Defendant's actions were intentional, willful, purposeful, malicious, and were undertaken with clear knowledge and foresight that the harm complained of by the Plaintiff would occur, and further with full knowledge that its their actions would violate or impair the Plaintiff's constitutional and civil rights.

### COUNT III

### FEDERAL CIVIL RIGHTS VIOLATIONS - 42 U.S.C. §1983

**Plaintiff v. All Defendants**
**Stigma Plus, Violation of Plaintiff's Right to Due Process, Impairing Liberty Interest in Plaintiff's Reputation**

95.     The Plaintiff adopts and incorporates by reference all preceding paragraphs and allegations, as if fully set forth herein.

96.     Defendant Penn State University, by and through its officers, officials, agents and employees, including but not limited to Defendants Joyner and Del Giorno, and Defendants Joyner and Del Giorno, in their official and individual capacities, while acting as

27

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

state actors and under color of state law, created and disseminated false and defamatory impressions and statements about Plaintiff in connection with and concurrent with Plaintiff's constitutionally improper termination from employment without adequate pre- or post-termination procedural due process.

97.     The aforesaid actions by Defendant Penn State University, by and through its officers, agents, employees and officials, including but not limited to Defendants Joyner and Del Giorno, in their official and individual capacities, while acting as state actors and under color of state law, have blackened Plaintiff's name and reputation, thus depriving the Plaintiff of his protected liberty interest in his reputation under the Fourteenth Amendment of the United States Constitution, without due process of law.

98.     The false and defamatory impressions and statements created and disseminated by the Defendants about the Plaintiff in connection with the improper termination of his employment were false, misleading, and made with reckless disregard for the truth, and were made publicly and as part of the Plaintiff's permanent employment record.

99.     Defendants, individually and in concert, and knowing that the Plaintiff had not violated any Penn State guideline, policy or regulation, or any law, summarily removed all references to Coach Kaidanov's long and formerly unblemished tenure from its public website at Penn State University without a factually accurate comment except to note that his removal involved a "personnel matter", inviting rampant and unfounded speculation in the post-Sandusky era that Coach Kaidanov had committed an egregious act or acts, which the Defendants knew was not the case.

100.    To the present, despite having elected to publicly announce Coach Kaidanov's sudden and otherwise inexplicable discharge during an otherwise unblemished career, Penn State University, Joyner, Del Giorno and other employees of Penn State University have

refused to publically and truthfully state why Coach Kaidanov was terminated and, instead, continue to mislead the public by stating that Coach Kaidanov was terminated, in essence, for a "personnel matter", falsely implying wrongdoing on his part.  Similar statements were also made by representatives of Penn State, the Penn State athletics department, and members of the Penn State Board of Trustees.

101.    The grievance hearing was recorded by the Defendants, and in an attempt to clear his name and reputation, Coach Kaidanov has repeatedly asked Penn State to release the recording of that proceeding to the public.  Despite these requests, Penn State refuses to do so, and instead continues its pattern of refusal to accurately comment upon the facts of Coach Kaidanov's improper termination, with reckless disregard for the truth.

102.    The Defendants well know that the improper termination of Coach Kaidanov was pre-textual, wrongful and without basis.  Nevertheless, the Defendants have continued to expose Coach Kaidanov to public scorn, contempt, emotional damage, distress, humiliation, embarrassment, loss of his good name and reputation and other harms by implying that Coach Kaidanov committed an act worthy of his termination, and by refusing to accurately and truthfully provide the reasons for his wrongful termination.

103.    Defendants have denied Plaintiff's request for any form of a name-clearing hearing that could clear his name.  Because the Defendants' defamatory impressions, actions and statements were disseminated publicly, due process requires that any such name-clearing process also be public.

104.    The improper termination of Coach Kaidanov, and the Defendants' statements regarding his firing, including but not limited to the placement of a pre-textual and inaccurate letter of termination based on false information in Coach Kaidanov's employment file, have irreparably harmed Coach Kaidanov's reputation for honesty and integrity, have irreparably

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

harmed his ability to earn a living in his chosen profession, and occurred concurrent with

and/or as a product of the deprivation of Coach Kaidanov's protected employment.

## COUNT IV

## STATE LAW CLAIM - TORTIOUS INTERFERENCE WITH CONTRACT ABSENT PRIVILEGE OR JUSTIFICATION

### Plaintiff v. Defendants Joyner and Del Giorno

105.     The Plaintiff adopts and incorporates by reference all preceding paragraphs

and allegations, as if fully set forth herein.

106.     At all times relevant hereto, the Plaintiff enjoyed a contractual relationship

between himself and Defendant Penn State University.

107.     At all times relevant hereto, Defendants Joyner and Del Giorno, by their

intentional, malicious and/or reckless acts and/or omissions, conspired and acted with the

intention of causing the Plaintiff to be falsely and wrongfully terminated from his

employment, notwithstanding their actual knowledge that the Plaintiff had not engaged in

improper or wrongful conduct, and notwithstanding their knowledge that the basis and

justifications offered in support of their accusations and actions against the Plaintiff were

false.

108.     At no time was there a privilege or justification available to Defendants Joyner

or Del Giorno to act with malice, with reckless disregard for the truth, and/or  with the intent

to falsely cause the Plaintiff to be wrongfully terminated from his employment, in violation of

his constitutional rights, federal law, state law, contractual rights, and all other applicable

standards and protections.

109.     At all times relevant hereto, Defendants Joyner and Del Giorno acted with

malicious and/or reckless disregard for the fact that the Plaintiff had a contract with

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA   19102

Defendant Penn State University, that he was entitled to the good faith execution of that

contract by Penn State University and its agents, servants and employees, and that he enjoyed

constitutional and other protected rights and benefits in said employment, and its

continuation.

110.    The acts and/or omissions of Defendants Joyner and Del Giorno had no

purpose other than the wrongful interference in and termination of the Plaintiff's contractual

relationship with Defendant Penn State University, which the said Defendants Joyner and Del

Giorno achieved on the basis of false pretense and pre-textual and malicious and/or reckless

acts taken against the Plaintiff, and misrepresented to Penn State University, or otherwise

adopted and ratified by Penn State University, resulting in the Plaintiff's loss of contractual

employment.

111.    As a direct and proximate result of the tortious interference by Defendants

Joyner and Del Giorno with Plaintiff's contractual relationship, the Plaintiff was caused to

suffer the premature termination of his contract, loss of future contractual employment with

Penn State University, loss of income, loss of earning capacity, emotional distress,

embarrassment, humiliation, damage to his reputation, loss of liberty and other economic and

non-economic harm, all to his detriment, loss and harm.

## COUNT V

## STATE LAW CLAIM - WRONGFUL TERMINATION

### Plaintiff v. All Defendants

112.    The Plaintiff adopts and incorporates by reference all preceding paragraphs

and allegations, as if fully set forth herein.

113.    At all times relevant hereto, Defendant Penn State University imposed upon

Coach Kaidanov numerous affirmative duties and responsibilities regarding the safeguarding

31

and protection of student-athletes, as well as investigating, enforcing and reporting any violations or suspected violations of matters of integrity within the men's and women's fencing teams, and the athletics department in general.

114.    At the same time, Defendant Penn State University adopted and bound itself to certain protections, assurances and safeguards to those coaches and staff who acted in good faith in the performance of the several duties and responsibilities imposed upon them as conditions of employment by the University.  In addition, coaches and staff, including the Plaintiff, were otherwise entitled to certain protections and safeguards provided by the University's policies and procedures for the benefit of its coaches, staff and employees, as well as those protections provided by law.  At all times relevant hereto, the Plaintiff had a reasonable expectation of the Defendants' good faith adherence to those policies and procedures.

115.    Notwithstanding that Coach Kaidanov acted at all times in compliance with his contract with Defendant Penn State University, and was at all times compliant with the numerous affirmative duties and responsibilities imposed upon him as conditions of his employment, the Defendants, individually and jointly, engaged in false, fraudulent and malicious and/or reckless conduct to deprive the Plaintiff of his employment and reputation, as well as conduct in violation of the Plaintiff's constitutionally protected rights and the laws and public policies of the Commonwealth of Pennsylvania.

116.    Defendants intentionally failed to abide by their contract with the Plaintiff, as well the several agreements, codes of conduct, policy manuals, handbooks, University policies, rules, standards and procedures that established the affirmative duties and responsibilities of all parties to this action, and wrongfully terminated the Plaintiff without just cause, in violation of his contract, and in contravention of the policies, procedures and

**The Law Offices of Alvin F. deLevie**
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

protections to which the Plaintiff was entitled, contractually and otherwise.

117.     Notwithstanding the Defendants' duty to act in good faith, and in compliance
with the Plaintiff's contract and those agreements, codes of conduct, policy manuals,
handbooks, University policies, rules, standards and procedures to which the Plaintiff had a
reasonable expectation of compliance by the Defendants, the Defendants failed to act in good
faith and intentionally, willfully and/or in reckless disregard of the truth, caused the Plaintiff
to be wrongfully terminated from his employment.

118.     Among other false pretense and pre-textual reasons provided by Defendants to
justify Plaintiff's wrongful termination was the false and unfounded allegation that the
Plaintiff had violated Penn State Administrative Policy AD67, for which allegation there is no
good faith factual support or evidence, and which at all times relevant hereto served as a false
basis for an otherwise improper termination carried out by the Defendants.

119.     Similarly, among other false pretense and  pre-textual reasons provided by
Defendants to justify Plaintiff's wrongful termination was the false and unfounded allegation
that the Plaintiff might, at some future time, fail to abide by Policy AD67, even if he had not
done so prior to his wrongful termination. At all times relevant hereto, Coach Kaidanov had
unequivocally stated acceptance and understanding of his obligation to adhere to all Penn
State policies, explicitly including AD67.

120.     The acts and omissions of the Defendants, individually and severally, in
constructing and relying upon a false pretext for the wrongful termination of the Plaintiff,
constitute actual fraud.

121.     The acts and omissions of the Defendants, individually and severally, in
constructing and relying upon a false pre-text for the wrongful termination of the Plaintiff,
constitute actual malice.

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA  19102

122.    Defendant Penn State University is liable for the acts and/or omissions of

Defendants Joyner and Del Giorno as alleged herein, as well as the acts or omissions of its

other employees as alleged herein, under the doctrines of agency, vicarious liability, master-

servant, respondeat superior, joint venture and contract.

123.    As a direct and proximate result of the aforesaid acts of the Defendants, the

Plaintiff has suffered loss of his employment, loss of employment opportunities, loss of

income, loss of earning capacity, emotional distress, embarrassment, humiliation, damage to

his reputation, loss of liberty and other economic and non-economic harm, all to his

detriment, loss and harm.

<h3 style="text-align:center">COUNT VI</h3>

<h3 style="text-align:center">STATE LAW CLAIM - BREACH OF CONTRACT</h3>

<h3 style="text-align:center">Plaintiff v. All Defendants</h3>

124.    The Plaintiff adopts and incorporates by reference all preceding paragraphs

and allegations, as if fully set forth herein.

125.    Plaintiff's employment contract term was renewed on July 1, 2013.

126.    Plaintiff's contract had been renewed annually over a period of 31 years, and

absent the wrongful conduct engaged in by the Defendants as described herein, the Plaintiff

reasonably relied upon and had an expectation of the continued renewal of his contract while

he continued to abide by and comply with the terms of said contract.

127.    Despite Plaintiff's good faith compliance with the terms, conditions and

requirements of his employment, Defendant Penn State University, by and through

Defendants Joyner and Del Giorno, in their official and individual capacities, and as the

agents, servants and employees of Defendant Penn State University, knowingly and

intentionally breached the contract between Penn State and the Plaintiff, as previously set

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA   19102

forth herein by falsely and wrongfully terminating the Plaintiff on August 20, 2013 without just cause and during his contract term.

128.    The Defendants' stated reasons for wrongfully terminating Plaintiff and breaching his contract were false and pretextual.

129.    The acts and omissions of the individual Defendants constitute fraud.

130.    The acts and omissions of the individual Defendants constitute actual malice.

131.    As a direct and proximate result of the acts of the Defendants, individually, in concert, and as carried out pursuant to agency and employment, the Plaintiff suffered the premature termination of his contract, loss of future contractual employment with Penn State University, loss of income, loss of earning capacity, emotional distress, embarrassment, humiliation, damage to his reputation, loss of liberty and other economic and non-economic harm, all to his detriment, loss and harm.

## COUNT VII

## STATE LAW CLAIM – FALSE LIGHT

### Plaintiff v. All Defendants

132.    The Plaintiff adopts and incorporates by reference all preceding paragraphs and allegations, as if fully set forth herein.

133.    At no time material hereto was Plaintiff considered a public figure as defined by relevant state law.

134.    Defendant Penn State University, by and through its officers, officials, agents and employees, including but not limited to Defendants Joyner and Del Giorno, and members of the Board of Trustees in their official and individual capacities, created and disseminated false and defamatory impressions and statements about Plaintiff in connection with and concurrent with Plaintiff's wrongful termination.

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA 19102

135.    The aforesaid actions by Defendant Penn State University, by and through its officers, agents, employees and officials, including but not limited to Defendants Joyner and Del Giorno, and members of the Board of Trustees in their official and individual capacities have painted Plaintiff in a false light and blackened Plaintiff's name and reputation. The false light that these Defendants put the Plaintiff in is of a kind that would be highly offensive to a reasonable person.

136.    The false and defamatory impressions and statements created and publicly disseminated by the Defendants about the Plaintiff were misleading, and made with reckless disregard for the truth.

137.    Defendants, individually and in concert, and knowing that the Plaintiff had not violated any Penn State guideline, policy or regulation, or any law, summarily removed all references to Coach Kaidanov's long and formerly unblemished tenure from its public website at Penn State University without a factually accurate comment except to note that his removal involved a "personnel matter", painting him in a false light and inviting rampant and unfounded speculation in the post-Sandusky era that Coach Kaidanov had committed an egregious act or acts -- which the Defendants knew was not the case -- such that serious offense could reasonably be expected to be taken by a reasonable person in the Plaintiff's position.

138.    To the present, despite having elected to publicly announce Coach Kaidanov's sudden and otherwise inexplicable discharge during an otherwise unblemished career, Penn State University, Joyner, Del Giorno and other employees of Penn State University have refused to publically and truthfully state why Coach Kaidanov was terminated and, instead, continue to mislead the public by stating that Coach Kaidanov was terminated, in essence, for a "personnel matter", falsely implying wrongdoing on his part. Similar statements were also

The Law Offices of Alvin F. deLevie
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA   19102

made by representatives of Penn State, the Penn State athletics department, and members of the Penn State Board of Trustees.

139.    The Defendants well know that the improper termination of Coach Kaidanov was pre-textual, wrongful and without basis.  Nevertheless, the Defendants have maliciously continued to expose Coach Kaidanov to public scorn, contempt, emotional damage, distress, humiliation, embarrassment, loss of his good name and reputation and other harms by implying that Coach Kaidanov committed an act worthy of his termination, and by refusing to accurately and truthfully provide the reasons for his wrongful termination, clearly placing him in a false position before the public.

140.    As a direct and proximate result of the Defendants' deliberate, malicious, reckless, and/or negligent misconduct set forth at length above, Plaintiff has suffered mental anguish, shame, humiliation, and public scorn. Further, the false light in which the Plaintiff has been placed would be highly offensive to any reasonable person.

**WHEREFORE**, Plaintiff requests the following relief:

  a.  That this Honorable Court reinstate Plaintiff to his former employment with Defendant Pennsylvania State University;

  b.  Compensatory damages as to all Defendants, including back pay and front pay;

  c.  Punitive damages against all Defendants;

  d.  Reasonable attorney's fees and costs as to all Defendants;

  e.  Further relief as may be appropriate.

**The Law Offices of Alvin F. deLevie**
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA   19102

**LAW OFFICES OF ALVIN F. de LEVIE**

By:

ALVIN F. de LEVIE
Attorney for Plaintiff
1500 J.F.K. Blvd., Suite 1850
Philadelphia, PA   19102
215.351.1100
215.351.0257 (telefax)